

**CHIEF FINANCIAL OFFICER**
**JEFF ATWATER**
**STATE OF FLORIDA**

# EXHIBIT 1



16-058863

PEDRO P. BOSCH,

PLAINTIFF(S),

VS.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,
A FOREIGN CORPORATION,

DEFENDANT(S).
_____/

SUMMONS, COMPLAINT FOR DISABILITY INSURANCE BENEFITS, EXHIBIT

**CASE #:** 2016-008983 CA 01
**COURT:** CIRCUIT COURT
**COUNTY:** MIAMI-DADE
**DFS-SOP#:** 16-058863

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by PROCESS SERVER on the 18th day of April, 2016 and a copy was forwarded by Electronic Delivery on the 27th day of April, 2016 to the designated agent for the named entity as shown below.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
RAYMOND J MANISTA
GENERAL COUNSEL & SECRETARY
720 E. WISCONSIN AVE, RM S616
MILWAUKEE, WI 53202

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

Jeff Atwater
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

CARLOS A. ZIEGENHIRT, ESQ.
CARLOS A. ZIEGENHIRT, P.A.
150 ALHAMBRA CIRCLE
SUITE 1200
CORAL GABLES FL 33134

TSC

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

PEDRO P. BOSCH,

    Plaintiff,

v.

NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY,
a foreign corporation,

    Defendant.

_____/

CIVIL CIRCUIT DIVISION

CASE NO.: 0016-008983CA01

Allen Pyke
Certified Process Server ID#82
Second Judicial Circuit Florida
Date: 4/18/16        Time: 3:40 pm

TO: Northwestern Mutual Life Insurance Company, a Foreign corporation
    c/o Florida Chief Financial Officer as Registered Agent
    Service of Process Section
    P.O. Box 6200
    Tallahassee, FL 32314-6200

## SUMMONS

### PERSONAL SERVICE ON AN ENTITY

### IMPORTANT

    A lawsuit has been filed against you. You have **twenty (20) calendar days** after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your written response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of you written response to the person named below.

**WARNING:** Rule 12.285, Florida Family Law Rules of Procedure, requires certain automatic disclosure of documents and information. Failure to comply can result in sanctions, including dismissal or striking of pleadings.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y pudiera ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, usted puede consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presente su respuesta ante el tribunal, usted debe enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante).

**AVISO:** Regla 12.285, Florida Familia Ley Reglas de Procedimiento, demanda ciertos revelaciones de documentos y información. Fracaso para cumplir puede resultar en sanciones lo que incluir despida o manifesto a abogar.

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours connsecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte cijointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le delai requis, vous risquez de perdre la cause ainsi que votre salaire, votreargent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne cornaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite a la personne nommee ci-dessous.

**PREAVIS:** La regle 12.285 des regles de procedure du droit de la famille de la Florida exige que l'on remette certains renseignements et certains documents a la partie adverse. Tout refus de les fournir pourra donner lieu a des sanctions, y compris le rejet ou la suppression d'un ou de plusieurs actes de procedure.

*Attorney for Plaintiff:*      CARLOS A. ZIEGENHIRT, Esq.
CARLOS A. ZIEGENHIRT, P.A.
150 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
Tel: (305) 858-0220
Fax: (305) 854-6810
E-Mail Address: carlos@caz-law.com

**THE STATE OF FLORIDA:**
**TO EACH SHERIFF OF THE STATE:** You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above named defendant.

**DATED** on this 8th day of April, 2016.

APR 1 3 2016

CLERK OF THE COUNTY COURT

*Kayla Fite*

(SEAL)                          By: _____

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

PEDRO P. BOSCH,                                    CIVIL CIRCUIT DIVISION

      Plaintiff,                                  CASE NO.:

v.

NORTHWESTER MUTUAL
LIFE INSURANCE COMPANY,
a foreign corporation,

      Defendant.
_____/

## COMPLAINT FOR DISABILITY INSURANCE BENEFITS

COMES NOW, the Plaintiff, PEDRO P. BOSCH, M.D., by and through undersigned counsel and hereby files his Complaint against the Defendant, NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY and says:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs or attorney's fees.

2. Plaintiff, Pedro P. Bosch, M.D. (hereinafter, "Dr. Bosch" or the "Plaintiff"), was at all times material hereto a citizen of the United States and a resident of Miami-Dade County, Florida.

3. Defendant, Northwestern Mutual Life Insurance Company (hereinafter, "Northwestern Mutual") is a foreign corporation for profit, doing business in Florida, and engaged in the sale of disability income insurance policies and disability overhead expense policies.

4. Northwestern Mutual issued and delivered the disability income insurance policy at issue

(hereinafter, "Disability Income Policy") with a Policy Number: D599878 and the disability overhead expense policy at issue (hereinafter "Disability Overhead Policy") with a Policy Number: D599895 to Dr. Bosch (collectively, the "Disability Income Policy" and "Disability Overhead Policy" are referred to as the "Policies"). **A copy of the Disability Income Policy and the Disability Overhead Policy is attached hereto as Exhibit "A" and Exhibit "B", respectively.**

5. Dr. Bosch is a licensed medical doctor in the state of Florida and performed all material and substantial duties of his occupation covered by the Policies in Miami-Dade County, Florida. Defendant Northwestern Mutual is the insurer and administrator of the Policies.

6. This matter is governed by Florida law and venue is proper in Miami-Dade County, as the Policies were issued and delivered in Miami-Dade County, Florida.

## FACTS ALLEGATIONS

7. There was in full force and effect two (2) disability policies, one for disability income benefits and one for disability overhead expense benefits, numbered D599878 and D595895, respectively. The Policies each provided for disability benefits and constituted a binding contract of insurance between the parties.

8. Northwestern Mutual issued policy number D599895 to Dr. Bosch on May 26, 1988. Northwestern Mutual issues policy number D599878 to Dr. Bosch on June 27, 1988. Issuance of the Policies was in consideration of the premiums paid by the Plaintiff.

9. The Policies are covered by applicable provisions of Florida statutes on insurance in effect on the date the policies were issued or renewed including, but not limited to:

a. F.S. §627.426

b. F.S. §627.4233

c. F.S. §626.9547; and

d. F.S. §624.155

10. The purpose of policy number D599895 and policy number D599878 was to compensate

Dr. Bosch a monthly benefit, up to the first policy anniversary after age 65, in the event he

became disabled from his occupation as a medical doctor, as defined in the policy.

11. According to the provision of the policy number D599878, Total Disability, Occupation

and Conditional Renewal to Age 75, are defined as:

> **Total Disability.** Until the end of the Initial Period, the insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation.
>
> **Occupation.** The words "his occupation" mean the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time he becomes disabled will be combined together to be "his occupation".
>
> **Conditional Right to Renew to Age 75**
>
> On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if he Insured is actively and gainfully employed on a full-time basis. To renew this policy, the Owner must send a written request to the Company each year. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.
>
> For a Policy that is renewed:
>
> •benefits are payable only for total disability; and
>
> •the premium for each year of renewal will be based on the insured's age and the Company's rates in use at the time of renewal.

12. According to the provision of the policy number D599895, Total Disability, Occupation

and Conditional Renewal to Age 75, are defined as:

**Total Disability.** Until the end of the Initial Period, the insured is totally disabled when he is unable to perform the principal duties of his occupation.

**Occupation.** The words "his occupation" mean the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time he becomes disabled will be combined together to be "his occupation".

**Conditional Right to Renew to Age 75**

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if he Insured is actively and gainfully employed on a full-time basis. To renew this policy, the Owner must send a written request to the Company each year. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a Policy that is renewed:

•benefits are payable only for total disability; and

•the premium for each year of renewal will be based on the insured's age and the Company's rates in use at the time of renewal.

13. Dr. Bosch is employed as a Primary Care Physician on a full-time basis and was so employed before becoming disabled. However, on or about June 2011, Dr. Bosch became totally disabled as he was unable to perform the principal duties of his occupation.

14. On or about June 2011, Dr. Bosch began to experience pain in his hip-area, which condition continued to worsen. The condition progressed until approximately October 2011, when he required surgery to correct his condition and was unable to perform any of the functions of his medical practice until June 2012. Pursuant to the terms of his policies with the Defendant, Dr. Bosch was totally disabled at the time the policies were in full force and effect, particularly, as under the definition of Total Disability under the policy.

15. In accordance with the procedures set forth by the policies, Dr. Bosch notified the

Defendant that he was disabled.

16. Dr. Bosch's treating physicians have communicated to the Defendant (by way of patient file and treatment notes), that Dr. Bosch is totally disabled and/or was at the time the policies were in full force and effect.

17. Defendant in its November 10, 2015 letter stated that it only evaluated Dr. Bosch's claim as one which involved partial disability from June 3, 2011 to October 13, 2011 and determined that he was not eligible for benefits and further, the Defendant evaluated Dr. Bosch as not being eligible for benefits since he remained disabled on the June 2011 and 2012 anniversaries of policy number D599878 and on the May 2012 anniversary of policy number D599895.  In addition, the Defendant found that the policies should not have been renewed since he did not meet the Conditional Right to Renew contract requirements.

18. However, in reviewing Dr. Bosch's claim as stated in the above-referenced letter, the Defendant mischaracterizes Dr. Bosch's condition as one of partial disability v. one of total disability.  At the time his condition began to manifest itself, under the definition as stated in the policies, Dr. Bosch was totally disabled, a condition which continued during the period the policy was in full force and effect and prior to the renewal periods.

19. Plaintiff has been required to retain the undersigned attorney to enforce his policy benefits and is entitled to reasonable attorney's fees pursuant to Florida Statute §627.428.

## BREACH OF CONTRACT

The Plaintiff realleges and reavers paragraphs 1 through 19 of above as if fully set forth herein.

20. The Plaintiff has suffered a disability as defined in the policies issued by the Defendant.

The Plaintiff's disability caused him to be unable to perform the duties of a Primary Care Physician.

21. The Plaintiff has complied with all provisions and conditions precedent prior to filing suit.

22. The Defendant, under the terms of its contract of insurance, is indebted to the Plaintiff for monthly benefits plus interest, commencing on or about June 2011, for total disability income benefits and for overhead expense benefits, and to pay him benefits as they came due, prior to the renewal date.

23. The Defendant has failed and refused to honor its obligations under the policies of insurance issued to the Plaintiff, thereby breaching the terms of the policies and its duties and obligations to the Plaintiff, insured.

24. The breach by the Defendant of the terms of the policies is the legal and proximate cause of damages suffered by the Plaintiff, which damages continuing in nature.

WHEREFORE, the Plaintiff, Publio Bosch, M.D. demands judgment against the Defendant, Northwestern Mutual Life Insurance Company, for all contractual benefits, pre-judgment interest, paid premiums since the date of disability, costs and attorney's fees pursuant to F.S. §627.428 and such further relief this Court deems just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

The Plaintiff demands trial by jury of all issues so triable.

Dated this 8th day of April, 2016.

Respectfully submitted,

Carlos A. Ziegenhirt, P.A.
Attorneys for Plaintiffs
150 Alhambra Circle, Suite 1200
Coral Gables, FL 33134
Tel: 305-858-0220
Fax: 305-854-6810
Email: carlos@caz-law.com

By: /s/ Carlos A. Ziegenhirt
        Carlos A. Ziegenhirt
        FBN: 178896

# EXHIBIT "A"

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

Chief Executive Officer                Secretary

# SUBSTITUTE POLICY
## DISABILITY INCOME POLICY

### Eligible For Annual Dividends.

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy** -- Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, WI 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

MMD1



Northwestern Mutual

| INSURED | PEDRO P BOSCH | AGE AND SEX | 51 MALE |
|---|---|---|---|
| POLICY DATE | JUNE 27, 1988 | POLICY NUMBER | D 599 878 |

EXCLUSIONS--SEE SECTION 2.

MM D1

This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company.
Read your policy carefully.

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. BENEFITS**

Description of general terms. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime benefit payable for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 2. EXCLUSIONS**

**SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75**

**SECTION 4. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Physical examination may be required. Limits on when you may start a legal action.

**SECTION 5. OWNERSHIP**

Rights of the Owner. Assignment as collateral.

**SECTION 6. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 7. THE CONTRACT**

Changes. Incontestability. Misstatement of age. Dividends. Definition of dates.

**ADDITIONAL BENEFITS** (if any)

**APPLICATION**

MMD1

THIS SUBSTITUTE POLICY IS ISSUED ON THE
REPRESENTATION THAT THE ORIGINAL POLICY HAS BEEN
LOST OR DESTROYED. IT MAY NOT BE AN EXACT
DUPLICATION OF THE ORIGINAL POLICY.

*Cheryl Svehlek*

**Director - Disability Income**

*February 3, 2012*

BENEFITS AND PREMIUMS

DATE OF ISSUE - JUNE 27, 1988-:  **SUBSTITUTE POLICY**

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|
| DISABILITY INCOME | $   5,000 | $   3,201.00 | 15 YEARS |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM.
SEE SECTION 3.

A PREMIUM IS PAYABLE JUNE 27, 1988 AND EVERY JUNE 27 AFTER THAT.

The current premium is $3,201.00.

THE PREMIUM FOR THIS POLICY IS ON A NONSMOKER BASIS.

| | |
|---|---|
| BEGINNING DATE | 91ST DAY OF DISABILITY IN THE FIRST 180 DAYS AFTER THE START OF DISABILITY. |
| MAXIMUM BENEFIT PERIOD | 24 MONTHS OF BENEFITS. |
| INITIAL PERIOD | 24 MONTHS OF BENEFITS. |

OWNER                    PEDRO P  BOSCH, THE INSURED

| | | | |
|---|---|---|---|
| INSURED       PEDRO P  BOSCH | | AGE AND SEX | 51   MALE |
| POLICY DATE    JUNE 27, 1988 | | POLICY NUMBER | D 599 878 |
| EXCLUSIONS--SEE SECTION 2. | | | |

# SECTION 1. BENEFITS

## 1.1 GENERAL TERMS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 describes the benefits of the policy and tells when they are payable. It also gives the meaning of several important terms that are used in the policy.

**Insured and Owner.** The Insured and Owner are named on page 3. The male pronouns used in this policy for the Insured and Owner apply to both males and females.

**Disabilities Covered by the Policy.** Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the care of a licensed physician other than himself during the time he is disabled;
- the disability results from an accident or sickness; and
- the disablity is not excluded under Section 2.

**Benefit Terms.** The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under the policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together. If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then see Section 1.7.

**Initial Period.** This is a period of time that starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3. The definition of total disability changes after the Initial Period.

**Occupation.** The words "his occupation" mean the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time he becomes disabled will be combined together to be "his occupation".

## 1.2 FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period.

**Total Disability.** Until the end of the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation.

**Benefit Amount for Partial Month.** When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

## 1.3 PROPORTIONATE BENEFIT FOR PARTIAL DISABILITY

The Proportionate Benefit is payable for each month of partial disability between the Beginning Date and the end of the Maximum Benefit Period.

**Partial Disability.** The Insured is partially disabled when:

a. he is unable:
- to perform one or more of the principal duties of his occupation; or
- to spend as much time at his occupation as he did before the disability started; or

and

b. he has at least a 20% Loss of Earned Income.

Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be partially disabled if:

- he is unable to perform one or more principal duties which accounted for at least 20% of the time he spent at his occupation before the disability started; or
- he has at least a 20% loss of time spent at his occupation.

If the Insured qualifies for both the Full and Proportionate Benefit, the Full Benefit only will be paid.

**Benefit Amount for Partial Month.** When a partial disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of partial disability.

## 1.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by the Insured's Loss of Earned Income and divided by his Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\text{Full Benefit} \quad \text{X} \quad \frac{\text{Loss of Earned Income}}{\text{Base Earned Income}}$$

The maximum amount payable is 100% of the Full Benefit.

**Choice of Benefit Amount for First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or
- to receive a Benefit based on the Insured's Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change his choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under Section 1.5.

**Loss of Earned Income.** This is:

- the Insured's Base Earned Income; less
- his Earned Income for the month for which the Benefit is claimed.

Earned Income is credited to the period in which it is earned, not the period in which income is actually received.

**Earned Income.** Earned Income is:

- the sum of salary, wages, commissions, fees, bonuses, and other compensation or income earned by the Insured from all sources for work performed by him; less
- normal and customary business expenses.

It is determined before the deduction of federal, state and local income taxes.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for a 12 consecutive month period during the 24 month period before the start of disability. The 12 month period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \quad \text{X} \quad \frac{\begin{array}{c}\text{consumer price index} \\ \text{for the current year} \\ \text{of disability}\end{array}}{\begin{array}{c}\text{consumer price index} \\ \text{for the year} \\ \text{disability started}\end{array}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

**Consumer Price Index.** The "consumer price index for the year the disability started" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items ("CPI-U") for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

**Proof of Earned Income.** The Company may require proof, including income tax returns, of the amount of Earned Income for periods before and after the start of the disability.

## 1.5 TRANSITION BENEFIT

The Company will pay a Proportionate Benefit for up to the first three months after the Insured's recovery from a disability, provided:

- the Insured was disabled at least 12 months during the 24 month period after the start of disability;
- the Insured has returned to full-time employment;
- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and
- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under Section 1.4. Periods of total and partial disability may be added together to meet the 12 month requirement.

This Benefit is payable for up to three months for each separate disability. For any month this Benefit is payable, premiums will be waived.

## 1.6 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

## 1.7 LIFETIME BENEFIT FOR TOTAL DISABILITY

If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:

- the Insured is totally disabled on the policy anniversary that follows his 60th birthday; and
- the total disability continues beyond the policy anniversary that follows his 65th birthday.

## 1.8 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, he will be considered totally disabled if he incurs the total and irrecoverable loss of:

- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 2. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

## 1.9 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if:

- the disability lasts for at least 90 days; or
- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under Section 1.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

## 1.10 REHABILITATION BENEFIT

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

## 1.11 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

## 1.12 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. A disability is separate, and not a continuation of one that started earlier, if:

- the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time basis the principal duties of an occupation for at least 30 consecutive days; or
- the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 6 months after the end of the earlier one.

# SECTION 2. EXCLUSIONS

## 2.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:

- starts within two years after the Date of Issue; and
- results from an accident that occurred or from a sickness that appeared within two years before the Date of Issue and was not disclosed in the application.

## 2.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:

- is caused or contributed to by an act or incident of war, declared or undeclared; or
- is excluded from coverage by an Agreement for Limitation of Coverage.

MM D1
Florida, North Dakota

7

## SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if the Insured is actively and gainfully employed on a full-time basis. To renew this policy, the Owner must send a written request to the Company each year. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed:

* benefits are payable only for total disability; and
* the premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

## SECTION 4. CLAIMS

### 4.1 NOTICE OF CLAIM

Written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

* give the Insured's name and policy number; and
* be sent to the Home Office or be given to an authorized agent of the Company. The Home Office is located at:

> 720 East Wisconsin Avenue
> Milwaukee, Wisconsin 53202.

### 4.2 CLAIM FORMS

The Company will furnish claim forms within 15 days after receiving notice of claim. If claim forms are not furnished within that period, written proof of disability may be made without the use of the Company's forms.

### 4.3 PROOF OF DISABILITY

Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be

affected if the proof is given as soon as reasonably possible.

### 4.4 TIME OF PAYMENT OF CLAIMS

Benefits due under this policy will be paid monthly.

### 4.5 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to his estate.

### 4.6 MEDICAL EXAMINATION

The Company, at its own expense, may have the Insured examined as often as reasonably necessary in connection with a claim. This will be done by a physician of the Company's choice.

### 4.7 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of disability has been given. No legal action may be brought after the applicable statute of limitations has run from the time written proof is required to be given.

## SECTION 5. OWNERSHIP

### 5.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or his successor or transferee.

### 5.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

### 5.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will be charged with notice of the assignment only if a written assignment is received at the Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 5.2.

# SECTION 6. PREMIUMS AND REINSTATEMENT

## 6.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund at Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

## 6.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After the Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an application for reinstatement and evidence of insurability. The policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

- the application is approved by the Company; or

- notice that the application has been disapproved is not given within 45 days from the date the Company receives the application.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

- the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement; and

- the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty with Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the pro-rata premium for coverage until the next premium due date are received by the Company. The request must be received:

- no later than 90 days after the Insured's release from active duty; and

- no later than 5 years after the due date of the unpaid premium.

470

# SECTION 7. THE CONTRACT

## 7.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

## 7.2 INCONTESTABILITY

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a misstatement in the application. However, after this policy has been in force for two years from the Date of Issue, no misstatement in the application may be used to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

In addition, a claim may be denied on the basis that a disability or loss is caused by a Pre-Existing Condition (see Section 2.1). However, the Company may not reduce or deny a claim on that basis if the disability or loss:

- starts after two years from the Date of Issue; and

- is not excluded from coverage by an Agreement for Limitation of Coverage.

## 7.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and

- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

## 7.4 MISSTATED AGE

If the age of the insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age.

## 7.5 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the state in which the Owner resides on that Date are amended to conform to such statutes.

## 7.6 DIVIDENDS

This policy will share in the divisible surplus, if any, of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or

- paid to the Owner when premiums are being waived.

## 7.7 DATES

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

## 7.8 TERMINATION

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the insured or, if later, when the right to renew the policy ends (see Section 3). However, if the insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.

# EXHIBIT "B"

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

_Chief Executive Officer_                    _Secretary_

# SUBSTITUTE POLICY

### DISABILITY OVERHEAD EXPENSE POLICY

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy** -- Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, WI 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

MMD3



Northwestern Mutual®

| INSURED | PEDRO P BOSCH | AGE AND SEX | 51 MALE |
|---|---|---|---|
| POLICY DATE | MAY 26, 1988 | POLICY NUMBER | D 599 895 |

EXCLUSIONS--SEE SECTION 2.

MM D3

**This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company. Read your policy carefully.**

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. BENEFITS**

Description of general terms. Monthly Benefit payable for total disability. Covered expenses. Benefit becomes payable immediately for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 2. EXCLUSIONS**

**SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75**

**SECTION 4. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Physical examination may be required. Limits on when you may start a legal action.

**SECTION 5. OWNERSHIP**

Rights of the Owner. Assignment as collateral.

**SECTION 6. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 7. THE CONTRACT**

Changes. Incontestability. Misstatement of age. Dividends. Definition of dates.

**ADDITIONAL BENEFITS** (if any)

**APPLICATION**

MMD3

THIS SUBSTITUTE POLICY IS ISSUED ON THE REPRESENTATION THAT THE ORIGINAL POLICY HAS BEEN LOST OR DESTROYED. IT MAY NOT BE AN EXACT DUPLICATION OF THE ORIGINAL POLICY.

*Cheryl Svehlek*

Director – Disability Income

February 3, 2012

BENEFITS AND PREMIUMS

DATE OF ISSUE - MAY 26, 1988- SUBSTITUTE POLICY

| PLAN AND ADDITIONAL BENEFITS | MAXIMUM MONTHLY BENEFIT | | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|---|
| DISABILITY OVERHEAD EXPENSE | $ | 5,000 | $ 2,546.50 | 15 YEARS |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM. SEE SECTION 3.

A PREMIUM IS PAYABLE MAY 26, 1988 AND EVERY MAY 26 AFTER THAT.

The current premium is $2,546.50.

THE PREMIUM FOR THIS POLICY IS ON A NONSMOKER BASIS.

BEGINNING DATE                 61ST DAY OF DISABILITY IN THE FIRST 120 DAYS
                               AFTER THE START OF DISABILITY.

AGGREGATE BENEFIT AMOUNT        $60,000.

COVERED OVERHEAD EXPENSE        SEE SECTION 1.1.  IN ADDITION, SALARIES OR OTHER
                                COMPENSATION OF EMPLOYEES WHO ARE NOT SERVING AS
                                THE INSURED'S REPLACEMENT OR WHO DO NOT WORK IN
                                THE SAME PROFESSION AS THE INSURED ARE COVERED.

OWNER                 PEDRO P BOSCH, THE INSURED

INSURED       PEDRO P BOSCH              AGE AND SEX          51    MALE

POLICY DATE   MAY 26, 1988               POLICY NUMBER        D 599 895

EXCLUSIONS--SEE SECTION 2.

MM D3                         PAGE 3                              069

# SECTION 1. BENEFITS

## 1.1 GENERAL TERMS

This policy provides a monthly benefit for Covered Overhead Expense when the Insured is totally or partially disabled. Section 1 describes the benefits of the policy and tells when they are payable. It also gives the meaning of several important terms that are used in the policy.

**Insured And Owner.** The Insured and Owner are named on page 3. The male pronouns used in this policy for the Insured and Owner apply to both males and females.

**Disabilities Covered By The Policy.** Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the care of a licensed physician other than himself during the time that he is disabled;
- the disability results from an accident or sickness; and
- the disability is not excluded under Section 2.

**Benefit Terms.** The Schedule of Benefits and Premiums shown on page 3 has a number of important terms that are used in this policy. These terms are:

**Maximum Monthly Benefit.** This is the maximum amount of monthly benefit payable under the policy, except when a larger benefit is payable because of the Carryforward of Unused Benefit that is described in Section 1.2. When the term Maximum Monthly Benefit is used in this policy, it means the amount that is shown on page 3.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time that the Insured is disabled before the Beginning Date.

**Aggregate Benefit Amount.** This is the maximum total amount payable for a disability. All amounts paid under the policy for total, partial, or presumptive total disability or under the Transition Benefit will be considered as paid for the same disability unless the Insured has suffered a separate disability as described in Section 1.8.

**Occupation.** The words "his occupation" mean the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time he becomes disabled will be combined together to be "his occupation."

**Total Disability.** The Insured is totally disabled when he is unable to perform the principal duties of his occupation.

**Partial Disability.** The Insured is partially disabled when:

a. he is unable:

- to perform one or more of the principal duties of his occupation; or
- to spend as much time at his occupation as he did before the disability started;

and

b. his Covered Overhead Expense for the month is more than the Total Income for the month by at least $200.

Until the benefits for total or partial disability have been payable for six months, Covered Overhead Expense for the month need not be more than the Total Income for the month by at least $200 if:

- the Insured is unable to perform one or more principal duties which accounted for at least 20% of the time he spent at his occupation prior to disability; or
- he has at least a 20% loss of time spent at his occupation.

**Covered Overhead Expense.** Covered Overhead Expense is the total of monthly expenses that are normal and customary in the operation of the Insured's business or in the practice of his profession, with some exceptions as described below. This policy covers only the share of Covered Overhead Expense for which the Insured is liable.

These are examples of Covered Overhead Expense:

- real estate taxes and rent;
- interest on debt;
- electricity, telephone, heat and other utilities; and
- depreciation or scheduled installment payments of principal of debt.

The Owner must choose at the time a claim begins whether to claim depreciation or payment of principal of debt for the Insured's business or profession. The choice can be made only once for each separate disability. The amount of depreciation will be that used for federal income taxes. The amount of principal will not be more than that paid under a plan of scheduled installment payments which began before the start of disability.

Covered Overhead Expense does not include:

- any expense for which the Insured was not periodically liable before the start of disability;
- income taxes;
- payment for inventory, equipment or other assets; and
- salaries or other compensation except as follows:
  (1) **Replacement Salaries.** Covered Overhead Expense includes the salary or other compensation of a person that is hired to serve as the Insured's replacement if the replacement is not a member of the Insured's family. Family means spouse, parent, son, daughter, brother, or sister.
  (2) **Others In Same Profession.** If the Insured is partially disabled, Covered Overhead Expense will include the salary or other compensation of persons that are in the same profession as the Insured, but who are not performing as replacements for the Insured.
  (3) **Other Employees.** The salaries or other compensation of employees who are not serving as the Insured's replacement or who do not work in the same profession as the Insured are considered as Covered Overhead Expense only if such coverage is shown on page 3.

478

**Eligible Expense.** During a period of total disability, Eligible Expense is Covered Overhead Expense for that period.

During a period of partial disability or when the Transition Benefit is payable, Eligible Expense is:

- Covered Overhead Expense for that period; less
- Total Income for that period.

However, in no event will Eligible Expense for partial disability be less than zero nor more than the amount determined above for total disability.

For months in which the 50% Benefit is chosen, the 50% Benefit will be considered to be the Eligible Expense.

**Total Income.** Total Income is the gross earned income of the Insured's business or profession, less the cost of goods sold. Total Income is credited to the period for which it is earned, not the period in which it is received. If the Insured is liable for only a share of Covered Overhead Expense, only that portion of Total Income that is related to the work that is performed by the Insured or others under his supervision or direction will be considered in determining the amount of benefits payable.

## 1.2 MONTHLY BENEFIT FOR DISABILITY

The monthly benefit is payable for each month of total or partial disability after the Beginning Date. The benefit is not payable for a disability after the Aggregate Benefit Amount has been paid.

**Benefit Amount.** The amount of benefit payable for each month of total or partial disability, or for each month in which the Transition Benefit is payable, is equal to:

- the least of:
  - (i) total Eligible Expense since the Beginning Date;
  - (ii) the Maximum Monthly Benefit times the number of months of disability elapsed since the Beginning Date; and
  - (iii) the Aggregate Benefit Amount; less
- the total benefit paid since the Beginning Date.

**Carryforward Of Unused Benefit.** The amount of benefit that is payable for a month of disability may be more than the Maximum Monthly Benefit. This can happen when the Maximum Monthly Benefit exceeds the benefit that was payable in one month. The preceding formula allows the excess amount to be carried over to future months during the same disability.

**Carryforward Of Unused Expenses.** The Eligible Expenses for a month may be more than the benefit amount payable for the month. When this happens the formula allows the excess expenses to be carried over to future months during the same disability.

**Choice Of Benefit Amount For First Six Months.** For each of the first six months in which a benefit is payable for total or partial disability, the Owner may choose to receive:

- the amount determined under the formula; or
- 50% of the Maximum Monthly Benefit.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change his choice after the benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit that is payable under Section 1.3.

**Proof Of Income And Expense.** The Company may require proof, including income tax returns, of Total Income and Covered Overhead Expense for periods before and after the start of the disability.

**Benefit Amount For Partial Month.** When a total disability lasts for a part of a month, 1/30th of the monthly benefit for total disability will be payable for each day of total disability.

When a partial disability lasts for a part of a month, 1/30th of the monthly benefit for partial disability will be payable for each day of partial disability.

**Benefit Reduction Or Termination.** Benefits may be reduced if the Insured has other coverage. (See Section 1.9.)

If the Insured ends the operation of his business or the practice of his profession while totally or partially disabled, benefits for Covered Overhead Expense will end.

## 1.3 TRANSITION BENEFIT

The Company will pay a benefit for up to the first 12 months after the Insured's recovery from a disability, if:

- the Insured was disabled until the Beginning Date;
- the Insured has returned to full-time employment;
- Covered Overhead Expense exceeds Total Income by at least $200 in the month for which the benefit is claimed; and
- the Aggregate Benefit Amount has not been exceeded.

The amount of this Benefit will be the amount that would be paid for a partial disability under Section 1.2.

This Benefit is payable for up to 12 months for each separate disability. For any month this Benefit is payable, premiums will be waived.

## 1.4 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

## 1.5 BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, he will be considered totally disabled if he incurs the total and irrecoverable loss of:

- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

A monthly benefit is payable for this loss, provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 2. The Insured does not need to be under the care of a physician.

The monthly benefit for the loss:

- starts with the date of loss, not the Beginning Date;
- is payable for Covered Overhead Expense, but will not be more than the benefit amount that is described in Section 1.2 for total disability;
- is payable for as long as the loss continues until the Aggregate Benefit Amount has been paid; and
- is in lieu of the monthly benefits payable for total or partial disability.

## 1.6 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled, if the disability lasts beyond the Beginning Date.

The Company will continue to waive premiums after the Aggregate Benefit Amount has been paid only if the Insured:

- is totally disabled; and
- is not gainfully employed in any occupation;

or

- is partially disabled; and
- is not gainfully employed in any occupation other than his occupation.

If premiums are waived, the Company will refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability except where the waiver continues under Section 1.3. The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

## 1.7 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

## 1.8 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Beginning Date starts and new Aggregate Benefit Amount may be paid. A disability is separate, and not a continuation of one that started earlier, if:

- the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time basis the principal duties of an occupation for at least 30 consecutive days; or
- the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 6 months after the end of the earlier one.

## 1.9 LIMITED RIGHT TO REDUCE BENEFITS

Benefits may be reduced under this policy if the Insured has other coverage for overhead expenses. The Eligible Expense used to calculate the amount of benefit payable for each month of disability under Section 1.2 will be reduced if there is additional coverage for the Insured's Covered Overhead Expense under one or more policies with this Company or any other insurer.

The reduced Eligible Expense that is used to calculate the monthly benefit will be:

a. the Eligible Expense as described in Section 1.1;

multiplied by

b. the Maximum Monthly Benefit divided by the total of:

- the Maximum Monthly Benefit; and
- the maximum monthly benefits payable under all other overhead expense policies.

Thus, the reduced Eligible Expense equals:

$$\text{Eligible Expense} \times \frac{\text{Maximum Monthly Benefit}}{\text{maximum monthly benefit of all policies}}$$

480

# SECTION 2. EXCLUSIONS

## 2.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:

- starts within two years after the Date of Issue; and

- results from an accident that occurred or from a sickness that appeared within two years before the Date of Issue and was not disclosed in the application.

## 2.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:

- is caused or contributed to by an act or incident of war, declared or undeclared; or

- is excluded from coverage by an Agreement for Limitation of Coverage.

# SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if the Insured is actively and gainfully employed on a full-time basis. To renew this policy, the Owner must send a written request to the Company each year. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed:

- benefits are payable only for total disability; and

- the premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

# SECTION 4. CLAIMS

## 4.1 NOTICE OF CLAIM

Written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and

- be sent to the Home Office or be given to an authorized agent of the Company. The Home Office is located at:

    720 East Wisconsin Avenue
    Milwaukee, Wisconsin 53202.

## 4.2 CLAIM FORMS

The Company will furnish claim forms within 15 days after receiving notice of claim. If claim forms are not furnished within that period, written proof of disability may be made without the use of the Company's forms.

## 4.3 PROOF OF DISABILITY

Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible.

## 4.4 TIME OF PAYMENT OF CLAIMS

Benefits due under this policy will be paid monthly.

## 4.5 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to his estate.

## 4.6 MEDICAL EXAMINATION

The Company, at its own expense, may have the Insured examined as often as reasonably necessary in connection with a claim. This will be done by a physician of the Company's choice.

## 4.7 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of disability has been given. No legal action may be brought after the applicable statute of limitations has run from the time written proof is required to be given.

# SECTION 5. OWNERSHIP

### 5.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or his successor or transferee.

### 5.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

### 5.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will be charged with notice of the assignment only if a written assignment is received at the Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 5.2.

# SECTION 6. PREMIUMS AND REINSTATEMENT

### 6.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semiannually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund.** The Company will refund that portion of any premium paid for a period beyond:

* the date of the Insured's death; or
* the date the right of Cancellation by Owner is used (see Section 7.8).

### 6.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After the Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an application for reinstatement and evidence of insurability.

The policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

* the application is approved by the Company; or
* notice that the application has been disapproved is not given within 45 days from the date the Company receives the application.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

* the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement; and
* the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty with Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the pro-rata premium for coverage until the next premium due date are received by the Company. The request must be received:

* no later than 90 days after the Insured's release from active duty; and
* no later than 5 years after the due date of the unpaid premium.

481

# SECTION 7. THE CONTRACT

## 7.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

## 7.2 INCONTESTABILITY

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a misstatement in the application. However, after this policy has been in force for two years from the Date of Issue, no misstatement in the application may be used to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

In addition, a claim may be denied on the basis that a disability or loss is caused by a Pre-Existing Condition (see Section 2.1). However, the Company may not reduce or deny a claim on that basis if the disability or loss:

- starts after two years from the Date of Issue; and

- is not excluded from coverage by an Agreement for Limitation of Coverage.

## 7.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs;

- the Company's limits on the amount of disability income insurance; and

- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

The Company's requirements for medical proof of insurability will be waived if:

- the Insured has ended operation of his business or practice of his profession other than during a period of total or partial disability;

- the request to change is received by the Company no later than one year after the Insured has

ended the operation of his business or practice of his profession; and

- the change is to a policy with a Maximum Benefit Period of two years.

## 7.4 MISSTATED AGE

If the age of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age.

## 7.5 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the state in which the Owner resides on that Date are amended to conform to such statutes.

## 7.6 DIVIDENDS

This policy will share in the divisible surplus, if any, of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or

- paid to the Owner when premiums are being waived.

## 7.7 DATES

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

## 7.8 CANCELLATION BY OWNER

If the Insured ends operation of his business or practice of his profession when he is not totally or partially disabled, the Owner may cancel the policy. The cancellation will take effect on receipt of written notice at the Home Office.

## 7.9 TERMINATION

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 3). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.